**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| JULIO LOPEZ and MICHAEL OROS, | |
| *On Behalf of Themselves and All Others Similarly Situated*, | |
| Plaintiffs, | **Case No.: 1:20-cv-00761-LY** |
| v. | |
| VOLUSION, LLC, | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION, AND APPROVAL OF NOTICE PLAN**

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................................................2

III.    THE TERMS OF THE PROPOSED SETTLEMENT .........................................................4

    A.   Certification of the Class ...........................................................................................4

    B.   Relief for the Class ....................................................................................................4

    C.   Settlement Release .....................................................................................................5

    D.   Attorneys' Fees, Costs, and Service Awards .............................................................5

    E.   Notice Program ..........................................................................................................6

    F.   Opt-Out and Objection Deadlines and Procedures ....................................................6

    G.   Claims Administration ...............................................................................................7

IV.    ARGUMENT .......................................................................................................................7

    A.   Legal Standard ...........................................................................................................7

    B.   The Proposed Settlement is Fair, Adequate, and Reasonable ....................................9

        1.   Plaintiffs and Class Counsel Have Adequately Represented the Class ................9

        2.   The Settlement Is the Result of Arm's-Length Negotiations and Without

            Fraud or Collusion ..........................................................................................10

        3.   The Settlement is Favorable Given the Complexity, Expense, and Likely

            Duration of the Litigation ...............................................................................10

        4.   The State of Litigation and the Available Discovery ........................................13

        5.   The Settlement Terms Represent a Highly Favorable Compromise that Appropriately

            Balances the Merits of Plaintiffs' Claims and the Likelihood of Success with the

            Attendant Risk ................................................................................................13

6.  The Settlement Is in the Class's Best Interests .......................................................15

7.  The Settlement Treats Class Members Equitably Relative to Each Other .........................15

C.  The Court Should Preliminarily Certify the Class .......................................................16

1.  The Class Meets the Requirements of Federal Rule of Civil Procedure 23(a) ..................16

2.  The Class Meets the Demands of Rule 23(b)(3)...........................................................18

3.  The Court Should Approve the Proposed Class Notice Program.....................................19

V.  CONCLUSION. ......................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Abboud v. Agentra, LLC,*
   No. 3:19-CV-00120-X, 2020 WL 5526557 (N.D. Tex. Sept. 14, 2020) ........................................... 19

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997) ........................................................................................................... 16, 18

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
   568 U.S. 455 (2013) ................................................................................................................... 18

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.,*
   211 F.R.D. 457 (S.D. Fla. 2002) ........................................................................................ 10-11

*Ayers v. Thompson,*
   358 F.3d 356 (5th Cir. 2004) ....................................................................................... 11, 12, 13

*Cotton v. Hinton,*
   559 F.2d 1326 (5th Cir. 1977) ......................................................................................... 8, 11

*DeHoyos v. Allstate Corp.,*
   240 F.R.D. 269 (W.D. Tex. 2007) ...................................................................................... 13, 14

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ..................................................................................................... 6, 19

*Gen. Tel. Co. of the Northwest, Inc. v. EEOC,*
   446 U.S. 318 (1980) ................................................................................................................... 16

*Hays v. Eaton Grp Attys., LLC,*
   No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029 .......................................................... 9

*In re Corrugated Container Antitrust Litig.,*
   659 F.2d 1322 (5th Cir. 1981) .............................................................................................. 14

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................... 9, 10, 13, 17, 18

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico,*
   910 F. Supp. 2d 891 (E.D. La. 2012) *aff'd sub nom In re Deepwater Horizon,*
   739 F.3d 790 (5th Cir. 2014) ....................................................................................... 8, 16

*In re Talbert,*
   347 B.R. 804 (E.D. La. 2005) ................................................................................................... 16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
   No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) .................................. 17, 18

*James v. City of Dallas,*
   254 F.3d 551 (5th Cir. 2001) ............................................................................................... 17

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ........................................................................... 8, 9, 10, 11, 15

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) ........................................................................................... 17

*Manchaca v. Chater*,
   927 F. Supp. 962 (E.D. Tex. 1996) ................................................................................. 9

*McGlenn v. Driveline Retail Merch., Inc.*,
   No. 18-CV-2097, 2021 WL 165121 (C.D. Ill. Jan. 19, 2021) ......................................... 14

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ........................................................................................... 16

*Odonnell v. Harris Cnty.*,
   No. H-16-1414, 2019 WL 4224040 (S.D. Tex. Sep. 5, 2019) ................................. 8, 16, 20

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) ......................................................................................... 13

*Pettway v. Am. Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) ......................................................................................... 8

*Purdie v. Ace Cash Express, Inc.*,
   No. 301CV1754L, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) ............................... 8

*Reed v. General Motors Corp.*,
   703 2d 170 (5th Cir. 1983) ...................................................................................... *passim*

*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*,
   188 F.R.D. 433 (W.D. Tex. 1999) ................................................................................... 13

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ......................................................................................................... 17

*Stott v. Capital Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) .................................................................................... 15

*Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012) ........................................................................................... 16

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632.ll (5th Cir. 2012) ....................................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................................... 16

## Rules

Federal Rule of Civil Procedure 23 ....................................................................... *passim*

**Statutes**

11 U.S.C. §362 ............................................................................................................................. 3

**Other**

*Manual for Complex Litigation,* § 21.632 .................................................................................. 16

*McLaughlin on Class Actions* § 6:7 (15th ed. 2018) ................................................................. 8

*Newberg on Class Actions* § 13:10 (5th ed.) ............................................................................. 7

## I.    __INTRODUCTION__

Plaintiffs Julio Lopez and Michael Oros, on behalf of themselves and all others similarly situated, with the consent of Defendant Volusion, LLC, respectfully request entry of an order granting preliminary approval of the class action settlement ("Settlement") set forth in the parties' Settlement Agreement,[1] certifying the Class, appointing Class Counsel, appointing Plaintiffs as Class Representatives, providing for issuance of Notice to the Class, and scheduling a date for the Final Approval Hearing. Plaintiffs' claims arise from the Data Security Incident, an alleged data breach involving malware placed on Volusion's e-commerce platform between on or about September 7, 2019 and October 10, 2019, which allegedly compromised the personally identifiable information ("PII") of approximately 502,000 individuals who provided their PII to merchants to make purchases through online stores using Volusion's payment software.

The proposed Settlement is the result of arm's-length negotiations with the assistance of mediator Bruce A. Friedman, Esq. of JAMS and provides substantial and meaningful relief to the Class. If approved, Volusion and its insurance company, Hartford Fire Insurance Company, will be obligated to pay all valid claims submitted by Class Members, subject to an agreed aggregate cap or maximum obligation of Hartford's remaining policy limits, which is estimated to be approximately $4,300,000.00 at the time of the Settlement Agreement (less additional defense expenses reasonably incurred in connection with the documentation, approval, and administration of the Settlement Agreement), Costs of Administration, attorneys' fees and costs, and Service Awards. The Settlement will resolve all claims that Plaintiffs and the Class have against the Released Parties arising from the Data Security Incident. Class Members who submit a valid Claim Form and supporting documentation will be entitled to a cash payment of up to $1,500.00 per person, including compensation for time spent responding to the Data Security Incident (up to 3 hours at $20.00/hour). The proposed Settlement is fair and well within the range of preliminary approval. *See* Joint Declaration of Class Counsel, ¶ 16, attached hereto as **Exhibit 2** ("Decl."). By settling now, the Class can take advantage

---

[1] Capitalized terms shall have the same meaning as those assigned to them in the Settlement Agreement, which is attached hereto as **Exhibit 1** and cited herein as "Agreement."

of remedies that would be unavailable or worth substantially less by the time of a litigated final judgment. *See id.* ¶ 23. And that, of course, assumes Plaintiffs could certify their claims for class treatment and prevail on the merits with respect to such claims, neither of which is certain. Plaintiffs respectfully request that the Court preliminarily approve the Settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Volusion is a technology company that provides "the infrastructure behind some of the most successful ecommerce stores online." *See* Class Action Complaint ("Compl."), ECF No. 1 ¶ 1. It offers an "all-in-one platform" for thousands of businesses to set up e-commerce shops, including by offering services that allow businesses to accept credit card payments. *Id.* Between September 7, 2019 and October 10, 2019, unauthorized actors gained access to Volusion's e-commerce platform by inserting malicious code into a Volusion JavaScript library, including a "payment card skimmer" that accessed and acquired PII of consumers making purchases through Volusion's e-commerce platform, including Plaintiffs'. *Id.* ¶¶ 2, 6. Consumers who made purchases through the online stores using Volusion's compromised payment software during this time period had their card details and other personal information stolen and passed to an unauthorized third party. *Id.* ¶ 3. The PII stolen in the Data Security Incident (referred to in the Complaint as the "Data Breach") included names, addresses, phone numbers, email addresses, credit card numbers, CVVs, and expiration dates. *Id.* Ex. A. Although Volusion discovered the Data Security Incident on or about October 8, 2019, it was not until April 21, 2020 that Volusion distributed a Notice of Data Incident to its customers, including Plaintiffs. *See id.* Plaintiffs allege Volusion is liable for the Data Security Incident because it failed to: (a) exercise reasonable care and implement and maintain adequate security systems, protocols, and practices; (b) detect the breach while it was ongoing; and (c) timely notify Plaintiffs and Class members of the Data Security Incident. *See, e.g., id.* ¶ 98. Plaintiffs and Class Members have allegedly suffered economic and noneconomic injuries. *See, e.g., id.* ¶¶ 59-61, 68, 71, 100.

Plaintiff Lopez filed a Class Action Complaint in the United States District Court for the Southern District of Florida on April 24, 2020 (the "S.D. Fla. Action"), asserting claims against Volusion related to the Data Security Incident. On June 18, 2020, Volusion filed a Motion to Dismiss

for Lack of Jurisdiction. On July 16, 2020, Plaintiff Lopez filed a Notice of Voluntary Dismissal of the S.D. Fla. Action, without prejudice, and, together with Plaintiff Oros, filed a Class Action Complaint in this Court on July 17, 2020, asserting the same claims alleged in the S.D. Fla. Action, as well as claims for violations of certain Illinois statutory provisions. *See generally* Compl.

On July 27, 2020 Volusion filed a Voluntary Chapter 11 Petition for Non-Individuals Bankruptcy, whereupon an automatic stay pursuant to 11 U.S.C. §362(a) went into place. *See* ECF No. 16. On August 10, 2020, this Court entered its Order staying the Litigation. *See* ECF No. 17. On November 20, 2020 the Bankruptcy Court confirmed Debtors' Combined Plan of Reorganization and Disclosure Statement of Volusion, LLC Pursuant to Chapter 11 of the Bankruptcy Code.[2] *See* Order, *In re Volusion LLC*, No. 5:20-BK-50082 (ECF No. 128) (attached hereto as **Exhibit 3**). The Effective Date of the Plan occurred on January 19, 2021. On June 2, 2021, the Bankruptcy Court entered its Order allowing Plaintiffs to pursue the Litigation provided that any recovery awarded shall be limited to any available insurance proceeds covering the Reorganized Debtor (*i.e.*, Volusion).[3] *See id.* (ECF No. 223). On August 18, 2021, this Court lifted the stay in the Litigation, and Volusion was ordered to file an answer to Plaintiffs' Class Action Complaint on or before September 13, 2021. *See* ECF 26. On September 13, 2021, Volusion filed its Motion to Dismiss. *See* ECF No. 27. Plaintiffs filed their Response in Opposition to the Motion to Dismiss on October 11, 2021, and Volusion filed its Reply on November 11, 2021. *See* ECF Nos. 31 and 32.

While the Motion to Dismiss remained pending, on February 7, 2022, the Parties mediated with experienced privacy litigation class action mediator Bruce A. Friedman, Esq. of JAMS. In advance, the Parties submitted lengthy mediation briefs, and Volusion provided settlement discovery to Plaintiffs regarding the limited insurance funds it has to resolve this Litigation. Decl. ¶ 10. Mediation

---

[2] The Court ordered that "The Plaintiffs may pursue the Lawsuit individually and on behalf of a putative class in the United States District Court for the Western District of Texas to final judgment, provided that any recovery awarded to the Plaintiffs, individually and/or on behalf of any class, on account of the Claim or the Complaint or any matter related thereto, shall be limited to any available proceeds from the Policy and the Reorganized Debtor shall have no liability with respect to same." *See* Ex. 3.
[3] Volusion's insurance policy from Hartford covers certain cyber risks.

was not successful that day, but Mr. Friedman and counsel continued communicating, resulting in the Parties' agreement to the material Settlement terms. *Id.* ¶ 12.

## III.    THE TERMS OF THE PROPOSED SETTLEMENT

The Settlement fully and finally resolves the claims and disputes between the Parties. The Settlement Agreement defines the Class, describes the Parties' agreed-upon exchange of consideration, and proposes a Notice Plan and Claim administration procedures.

### A.    Certification of the Class

The Parties agree to certification of a nationwide Class for settlement purposes as follows:

[A]ll persons to whom Volusion sent its Notice of Data Incident dated on or about April 21, 2020, advising that on or about October 8, 2019, Volusion learned that personal information of some customers of Volusion's merchant clients may have been improperly exposed as a result of malware placed on Volusion's e-commerce platform.

Excluded from the Class is any judge presiding over this matter and any members of their first-degree relatives, judicial staff, the officers and directors of Volusion and its customers who were impacted by the Data Security Incident, Class Counsel and their first-degree relatives, and persons who timely and validly request exclusion from the Class.

Agreement ¶ II.H.

### B.    Relief for the Class

The Settlement Agreement provides significant monetary relief in the form of Settlement Benefits. Except as otherwise provided in the Settlement Agreement, all Settlement Benefits shall be paid by Hartford, Volusion's insurer. Agreement ¶ VI.A. Hartford and Volusion's obligation to pay is subject to an agreed aggregate cap or maximum obligation of Hartford's remaining policy limits (approximately $4,300,000.00 at the time of the Settlement Agreement) less additional defense expenses reasonably incurred in connection with the documentation, approval, and administration of the Settlement Agreement. *Id.* ¶¶ VI.B-C. Hartford shall pay to the Settlement Administrator an amount sufficient to pay for and fund: Settlement Benefits, the Costs of Administration, Service Awards, and Class Counsel's reasonable attorneys' fees and costs. *Id.* ¶ VI.A. Each Class Member filing a valid Claim will be eligible for the following Settlement Benefits: (1) reimbursement for documented out-of-pocket losses up to a maximum of $1,500.00 per person, upon submission of a

Claim Form and supporting documentation, including out of pocket expenses incurred as a result of the Data Security Incident and fees for credit reports, credit monitoring, or other identity theft insurance product purchased between the date of Volusion's Notice of Data Incident and the date of the Claims Deadline; and (2) Compensation for time spent responding to the Data Security Incident (up to three 3 hours at $20.00/hour), which will be included within the $1,500 per-person limit and will not require supporting documentation. *Id.* ¶¶ III.A.1-3. In the highly unlikely event the aggregate amount of Hartford's and Volusion's obligation to pay and fund the Settlement as set forth herein would otherwise exceed Hartford's remaining policy limits, less additional defense expenses reasonably incurred in connection with the documentation, approval, and administration of this Settlement Agreement, then Settlement Benefits shall be subject to a *pro rata* reduction, if necessary. *Id.* ¶ VII.A. Any remaining funds after distribution will be paid to a Cy Pres Recipient approved by the Court. *Id.* ¶ VIII.B. The Parties propose Electronic Frontier Foundation. *Id.* ¶ II.P.

### C.    Settlement Release

In consideration for the monetary and other relief afforded in the Settlement Agreement, upon the Effective Date, Plaintiffs and Class members who do not submit a timely Request for Exclusion will be deemed to have released Volusion and Released Parties from any and all claims actually alleged in the Litigation and all potential claims, whether known or unknown, reasonably arising out of the same set of operative facts, under the laws of any jurisdiction, including federal law, state law, and common law, whether at law or equity. *Id.* ¶¶ IX.G, XIV.A, XIV.E.

### D.    Attorneys' Fees, Costs, and Service Awards

At least 30 days before the Opt-Out and Objection Deadlines, Class Counsel will file a fee application for an award of attorneys' fees and costs not to exceed $450,000.00 and a Service Award of $2,500.00 to each Class Representative (for a total of $5,000.00). *See id.* ¶¶ IV.A, V.A. The Service Award shall be separate and apart from any other sums agreed under the Settlement Agreement. *Id.* ¶ IV.A. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of attorneys' fees and costs or the Service Awards shall constitute grounds for termination of the Settlement Agreement. *Id.* ¶¶ IV.B, V.A.

### E.    Notice Program

Pursuant to Federal Rule of Civil Procedure 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable," Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The Settlement Agreement proposes a notice and administration process that best ensures that all Class Members will be informed of the pending settlement and, if it is approved, will receive their payment for approved Claims electronically or by award check sent by U.S. mail if a Class Member cannot receive funds electronically. *See* Agreement ¶¶ X.A, VIII. Not later than 10 calendar days after the Court enters the Preliminary Approval Order, Volusion will provide to the Settlement Administrator a list of all persons to whom Volusion sent its Notice of Data Incident (*i.e.*, the Class Members). *Id.* ¶ IX.C. Not later than 14 calendar days after receiving this list, the Settlement Administrator[4] will commence sending Class Notice to Class Members, *i.e.*, the Class Notice Date. *Id.* ¶¶ II.K, IX.D. The Settlement Administrator shall send Email Notice to all Class Members for whom Volusion provided an email address, and it shall disseminate Postcard Notice via First Class Mail to all Class members for whom the Settlement Administrator does not have a valid email address. *Id.* ¶¶ X.A.1-2. The Settlement Administrator will also establish a dedicated settlement website that includes the Settlement Agreement and other important Litigation documents; as well as a toll-free telephone number, e-mail address, and mailing address for Class Members to contact the Settlement Administrator directly. *Id.* ¶ XI.C.2.

### F.    Opt-Out and Objection Deadlines and Procedures

The Settlement Agreement provides for opt-out procedures. *See id.* ¶ XII. Any Class Member may make a Request for Exclusion by mailing or delivering such request in writing to the Settlement Administrator by the Opt-Out Deadline. *Id.* The Settlement Agreement also provides for objection

---

[4] The Declaration of Justin R. Hughes of Kroll Settlement Administration LLC ("Kroll"), the proposed Settlement Administrator, is attached hereto as **Exhibit 4**.

procedures. *See id.* ¶ XIII. Any Class member who wishes to be heard orally at the Hearing, or who wishes for any objection to be considered, may file a written notice of objection by the Objection Deadline. *Id.* The Notice shall advise Class members of the foregoing. *Id.*

### G.    Claims Administration

The Settlement Agreement requires the Settlement Administrator to administer and calculate the Class Members' Claims. *See id.* ¶ XI. The Settlement Administrator will carefully review and decide whether to approve all Claims received by the Claims Deadline (90 days after the Class Notice Date). The Settlement Administrator shall have sole discretion to review for eligibility, completeness, and plausibility whether the Claim requirements have been met. *Id.* ¶ III.B.1. If the Settlement Administrator determines a Claim is deficient in whole or part, the Settlement Administrator shall contact the Class Member and seek additional documentation or information to support the Claim. *Id.* ¶ III.B.2. The Settlement Administrator shall have the sole discretion and authority to determine whether the prerequisites have been met in order to award payments, but may consult with Class Counsel and Defense Counsel in making individual determinations. *Id.* ¶ III.B.3. The Settlement Administrator shall distribute Settlement Benefits for approved Claims not later than 30 business days after the Settlement's Effective Date. *Id.* ¶ XI.C.14.

## IV.    ARGUMENT

Before the Settlement can be approved, Class Members who will be bound by its terms must be notified and given an opportunity to object or otherwise react to the proposed Settlement. Fed. R. Civ. P. 23(e). This process takes time and can be expensive, so it has become customary for courts to first conduct a preliminary fairness review. *See Newberg on Class Actions* § 13:10 (5th ed.). Here, preliminary approval of the Settlement is warranted for the reasons set forth below.

### A.    Legal Standard

Under the revised Rule 23(e), the question for preliminary approval is whether "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)," which provision governs final approval. A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the

product of collusion, rather than arms-length negotiation." 2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018). The Rule 23(e)(2) standard for final approval of a proposed class action settlement remains whether it is "fair, reasonable and adequate," which requires the Court to consider whether "(A) the class representatives and class counsel have adequately represented the class"; "(B) the proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate"; and "(D) the proposal treats class members equitably relative to each other." Common-law criteria preceded the Rule 23 factors. In *Reed v. General Motors Corp.*, 703 2d 170, 172 (5th Cir. 1983), the Fifth Circuit laid out six factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed*, 703 F.2d at 172). "Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *Odonnell v. Harris Cnty.*, No. H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sep. 5, 2019) (citations omitted). "When considering [Rule 23(e)(2)] factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.,* No. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003); *see also In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 930-31 (E.D. La. 2012) ("Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate.), *aff'd sub nom In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) ("strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

Because "compromise is the essence of a settlement," "the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977).

Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649. Moreover, "[w]here, as here, the motion is for preliminary, and not final, approval, the standards are less stringent." *Hays v. Eaton Grp Attys., LLC,* No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029, at *20 (citations and internal quotation marks omitted). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.* (citations omitted).

### B.    The Proposed Settlement is Fair, Adequate, and Reasonable

For the following reasons, the Court should find it will likely be able to approve the proposed Settlement under Rule 23(e)(2) and certify the Class. Fed. R. Civ. P. 23(e)(1)(B).

#### 1.    Plaintiffs and Class Counsel Have Adequately Represented the Class.

Plaintiffs here have no conflicts of interest with other Class Members, are subject to no unique defenses, and they and their counsel have vigorously prosecuted and continue to vigorously prosecute this case on behalf of the Class. *See* Decl. ¶ 30. Further, Class Counsel are experienced in the litigation and settlement of class actions, including data privacy cases. *Id.* ¶ 21; *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.* ("*Heartland*"), 851 F. Supp. 2d 1040, 1055 (S.D. Tex. 2012) (adequacy satisfied where counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "in similar data-breach cases"). Class Counsel also thoroughly investigated the facts before and during the course of the Litigation. Decl. ¶ 7. This investigation allowed Class Counsel to better understand the key issues in negotiating the Settlement, *i.e.,* they had a "full understanding of the legal and factual issues surrounding this case." *Manchaca* v. *Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996); Decl. ¶ 11. Having sufficiently investigated the facts and given the risks of no recovery at all, Class Counsel and Plaintiffs settled this Litigation on a favorable basis without unduly prolonging it and without the expense and risk of a trial. They have adequately represented the Class under Rule 23(e)(2)(A).

2.  The Settlement Is the Result of Arm's-Length Negotiations and Without Fraud or Collusion.

The Settlement should be approved under Rule 23(e)(2)(B) and the first *Reed* factor. Before commencing litigation, Class Counsel investigated the potential claims against Volusion, interviewed potential plaintiffs, and gathered information about the Data Security Incident and its potential impact on consumers. Decl. ¶ 7. Class Counsel's appreciation of the merits of this case prior to settlement allowed them to engage in vigorous, arms-length negotiations with Volusion. *See Heartland*, 851 F. Supp. 2d at 1064 (approving settlement where parties showed "they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" where only informal discovery was taken and case settled at an early stage). The parties also engaged in extensive arm's-length negotiations overseen by an experienced mediator. Before mediation, Volusion provided information to Class Counsel about the limited resources it had to resolve this action. Decl. ¶ 10. The parties also briefed a heavily contested Motion to Dismiss and submitted lengthy mediation briefs. *Id.* ¶¶ 10-11. The mediation did not result in a settlement that first day; but with Mr. Friedman's assistance, the Parties ultimately agreed to the material Settlement terms. *Id.* ¶ 12.

"The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Klein*, 705 F. Supp. 2d at 651 (citation omitted). Here, not only is the Settlement the result of arm's-length negotiations, but there were no discussions about attorneys' fees and Service Awards until after an agreement regarding the class benefits was reached. Decl. ¶ 27. Thus, there is no threat of fraud or collusion affecting the fairness of the settlement negotiations. *See Heartland*, 851 F. Supp. 2d at 1064 ("[T]he parties negotiated and agreed to the proposed settlement before reaching the issue of attorneys' fees. . . . This factor supports approval of the settlement."). Given the arm's-length negotiations and lack of evidence of fraud or collusion, the Settlement is fair, reasonable, and adequate under Rule 23(e)(2)(B) and the first *Reed* factor.

3.  The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco*

*Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). Although this case was settled while a motion to dismiss was pending, the parties engaged in lengthy litigation to reach this point; specifically, they briefed and negotiated hotly contested issues before the Southern District of Florida, the Southern District of Texas (Bankruptcy), and this Court. *Id.* ¶ 15.

By negotiating a Settlement at this early stage, the parties have ensured that Class Members will receive the substantial benefits described above while avoiding the risks and potential pitfalls of prolonged litigation. *Id.* ¶ 23. While confident in the strength of their claims, Plaintiffs and Class Counsel also recognize the risks inherent in litigation of a complex data breach case. *Id.* ¶ 25. Indeed, it was this pragmatism and cognition of litigation risks that led Plaintiffs and Class Counsel to agree to cap the potential recovery while still ensuring that Plaintiffs' and the Class's claims would be litigated. *Id.* The negotiations with Volusion's bankruptcy counsel to avoid the risks of costly litigation in the bankruptcy court depleting the insurance policy of a bankrupt defendant, as well as the risk of having Plaintiffs' claims disallowed entirely in bankruptcy, resulted in the parties' agreement to continue litigating the claims' merits in this Court, provided that Plaintiffs' total available recovery be limited to the amount remaining on Volusion's applicable insurance policy. *Id.*

The risks, expense, complexity, and likely duration of further litigation support preliminary approval of the Settlement. *Id.* ¶ 23. Should litigation continue, Plaintiffs' claims could be dismissed or narrowed at the motion to dismiss stage, summary judgment, at trial, or on a subsequent appeal. *Id.* ¶ 25. Plaintiffs would also risk denial of class certification or the exclusion of key expert testimony. *Id.* Plaintiffs recognize each risk, by itself, could impede the success of their claims at trial and in an eventual appeal—which would result in zero recovery for the Class. *Id.* Even if they prevailed at trial, any recovery could be delayed for years by appeals. *Id.* It is also possible, in fact, likely, any non-negotiated award at trial might never be recovered by Plaintiffs due to collectability issues. *Id.* As discussed above, the Bankruptcy Court confirmed Volusion's Combined Plan of Reorganization and

Disclosure Statement of Volusion, LLC Pursuant to Chapter 11 of the Bankruptcy Code, *see* Ex. 3, and subsequently ordered that this Litigation may proceed but any recovery is "limited to any available proceeds from the Policy and the Reorganized Debtor shall have no liability with respect to same." The Settlement provides immediate and substantial benefits to approximately 502,000 Class Members—similar to the relief and benefits obtained in other data breach class actions. *See, e.g.,* Settlement Agreement, *Bahnmaier v. Wichita State University*, No. 2:20-cv-02246-JAR (D. Kan.) (ECF No. 33) (claims-made settlement capped at $300 per class member for out-of-pocket losses, including up to 3 hours of lost time at $20 per hour, for class of 443,000 whose names, email addresses, dates of birth, and Social Security numbers were compromised); *id.* at ECF No. 43 (granting final approval); Settlement Agreement, *Gordon v. Chipotle Mexican Grill, Inc.*, No. 1:17-cv-01415-CMA-SKC (D. Col.) (ECF No. 102-1) (claims-made settlement capped at $250 per class member for ordinary out-of-pocket losses (and up to $10,000 for certain defined, unreimbursed "extraordinary losses"), including up to 4 hours of lost time at $20 per hour, for class of approximately 10 million affected by payment card data breach); *id.* at ECF No. 128 (granting final approval); Final Approval Order, *In re Banner Health Data Breach Litig.*, No. 2:16-cv-02696-PHX, ECF No. 198 (D. Az.) (claims-made settlement capped at $6 million after 3 years of litigation where breach compromised names, Social Security numbers, and PHI of approximately 2.9 people).

If the Settlement is not approved, the parties will likely need to litigate through multiple dispositive motions, a motion for class certification, a potential motion to decertify the class, and multiple *Daubert* motions, among other things, which would likely take years to resolve and involve expensive expert discovery. Decl. ¶ 23. Yet there is no guarantee lengthy litigation and expensive discovery would lead to greater benefits for Class Members. *Id.* Instead, there would be multiple inflection points at which the Class's claims could be narrowed or dismissed. *Id.* Moreover, the parties will bear the cost of this litigation if it continues. *Id.* An early resolution, before both sides spend significant sums on litigation costs, is in the best interest of the Class. *Id.* In short, "settling now avoids the risks and burdens of potentially protracted litigation." *Ayers*, 358 F.3d at 369. Thus, the Settlement should be preliminarily approved under Rule 23(e)(2)(C)(i) and the second *Reed* factor.

### 4.  The State of Litigation and the Available Discovery.

Under the third *Reed* factor, the key issue is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Heartland*, 851 F. Supp. 2d at 1064 (quoting *Ayers*, 358 F.3d at 369). "A settlement can be approved under this factor even if the parties have not conducted much formal discovery." *Id.* (citations omitted); *see also San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999) (the "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available").

Here, prior to filing the case, Class Counsel investigated the Data Security Incident, as confirmed by the extensive public sources cited in the Complaint. Decl. ¶ 7. This allowed Class Counsel to determine the nature of the Data Security Incident, its perpetrator, the type of information compromised, and the number of putative Class Members. *Id.* Drawing on their previous experience in similar data-breach class actions, Class Counsel were able to determine the Settlement's adequacy in relation to the probability of success on the merits were this litigation to continue. *See id.* ¶ 22. Because the parties "possess ample information with which to evaluate the merits of the competing positions," *Ayers*, 358 F.3d at 369, this factor also favors preliminary approval of the proposed settlement. *See Reed*, 703 F.2d at 172.

### 5.  The Settlement Terms Represent a Highly Favorable Compromise that Appropriately Balances the Merits of Plaintiffs' Claims and the Likelihood of Success with the Attendant Risks.

When evaluating a proposed class action settlement, "the most important factor is the [fourth *Reed* factor,] probability of plaintiffs' success on the merits." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "[T]he Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007) (citing *Reed*, 703 F.2d at 172). At the same time, a district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotation marks and alteration

omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming finding that this factor favored approving settlement when class faced major obstacles in establishing proof of liability and damages); *DeHoyos*, 240 F.R.D. at 290 ("Because the laws of numerous states may be relevant to individual class member claims, plaintiffs would apparently face a further significant challenge to certifying the class outside the settlement context."). Similarly, the fifth *Reed* factor concerns "whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290-91. The fourth and fifth *Reed* factors weigh in favor of preliminary approval.

First, the Settlement terms approximate the rewards the Class likely would have received following a successful trial. Decl. ¶ 16. As described above, valid Class Member claims are eligible to receive up to $1,500.00, subject to a *pro rata* reduction, if necessary. *See* Section III.B, *supra*. These Settlement Benefits represent a highly favorable compromise that balances the merits of Plaintiffs' claims and the likelihood of succeeding at trial and on appeal with the attendant risks. Decl. ¶ 26. Though Plaintiffs and Class Counsel are confident they ultimately would have been able to prove their claims, they also understand the claims could be dismissed or narrowed at the motion to dismiss stage, class certification, summary judgment, at trial, or on a subsequent appeal. *Id.* ¶ 25; *see, e.g., McGlenn v. Driveline Retail Merch., Inc.*, No. 18-CV-2097, 2021 WL 165121, at *6 (C.D. Ill. Jan. 19, 2021) (denying class certification in data breach case because "the issues of causation and injury require individual inquiry"). Further, even if Plaintiffs prevailed, the amount Plaintiffs and the Class would have been awarded in damages, if any, is uncertain, as are the sources available to fund those allowed claims given Volusion's extremely limited resources following bankruptcy with limited insurance coverage fully funding the Settlement. *See* Agreement ¶ VI.A.

The inherent uncertainty in litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. Decl. ¶ 25. Finally, even assuming success at trial and Volusion's ability to pay a judgment, lengthy appeals are likely. *Id.* The proposed Settlement avoids these uncertainties and provides immediate, meaningful, and certain monetary relief;

thus, Plaintiffs and Class Counsel appropriately determined that the Settlement Benefits outweigh the risks of continued litigation. *Id.* Accordingly, the Settlement should be preliminarily approved under Rule 23(e)(2)(C)(i) and the fourth and fifth *Reed* factors.

### 6.    The Settlement Is in the Class's Best Interests.

Finally, Plaintiffs and Class Counsel firmly believe that this Settlement is fair, reasonable, and adequate, and in the best interests of Class Members, which is an important consideration in any class settlement analysis. Decl. ¶ 16. *See Klein,* 705 F. Supp. at 649 ("The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement."); *Reed*, 703 F.2d at 172 ("the opinions of the class counsel, class representatives, and absent class members" is one of six factors to consider when evaluating a class settlement); *Stott v. Capital Fin. Servs., Inc.,* 277 F.R.D. 316, 346 (N.D. Tex. 2011) (in evaluating a class action settlement, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties.") (citation and quotation marks omitted). Here, Class Counsel are all highly experienced in class action litigation and well positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. Decl. ¶ 22. They have collectively recovered over a billion dollars for class members in other litigation, including data breach cases. *See id.* ¶¶ 21, 32. Accordingly, the sixth *Reed* factor also supports preliminary approval.

### 7.    The Settlement Treats Class Members Equitably Relative to Each Other.

The final factor, Rule 23(e)(2)(D), considers whether class members are treated equitably. Here, the Settlement provides for a notice plan that is designed to reach as many Class Members as possible and provides Class Members with direct email notice and mail notice if email notice is not possible. It also informs Class Members of their right to object to, or opt out of, the Settlement. Every Class Member who submits a valid Claim is eligible to receive up to $1,500.00, only subject to *pro rata* reduction, if necessary. Thus, the Settlement treats Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D). *See* Fed. R. Civ. P. 23(e)(2)(D).

* * *

Each factor identified under Rule 23(e)(2) and required by the Fifth Circuit in *Reed* is satisfied. Given the litigation risks involved and the complexity of the underlying issues, the recovery is an excellent result. It could not have been achieved without full commitment by Plaintiffs and Class Counsel who respectfully submit that the Settlement is fair, reasonable, and adequate and meets each of the Rule 23(e)(2) and *Reed* factors such that notice of the Settlement should be sent to the Class. *See Odonnell*, 2019 WL 4224040, at *13 (preliminarily finding the proposed consent decree and settlement agreement terms were fair, reasonable, and adequate under Rule 23(e) and the governing case law where "[a]ll of the Rule 23(e)(2) and *Reed* factors weigh[ed] in favor of preliminarily approving the proposed consent decree and settlement agreement").

### C.  The Court Should Preliminarily Certify the Class

#### 1.  The Class Meets the Requirements of Federal Rule of Civil Procedure 23(a).

In assessing the parties' Settlement, the Court should also confirm that the underlying Class meets the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation*, § 21.632.

*Numerosity*. The class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). This determination "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). A showing that the class consists of more than forty members "should raise a presumption that joinder is impracticable." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citation omitted); *see also In re Talbert*, 347 B.R. 804, 808-809 (E.D. La. 2005) (numerosity with 88 members). Here, numerosity is easily met with approximately 502,000 Class members. *See* Decl. ¶ 28.

*Commonality*. Rule 23(a)(2)'s commonality requirement demands that "there are questions of law or fact common to the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 368 (2011). "The principal requirement of *[Dukes]* is merely a single common contention that enables the class action 'to generate common *answers* apt to drive the resolution of the litigation.'" *In re Deepwater Horizon*, 739 F.3d at 811 (quoting *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012)). "These 'common answers' may . . . relate to the defendant's injurious conduct." *Id.* Regardless, "a *single* common question

will do." *Id.* (quoting *Dukes,* 564 U.S. at 359) (emphasis added). Commonality is easily satisfied here. All Class Members' claims turn on whether Volusion's security environment was adequate to protect Class Members' PII. Thus, common questions include, *inter alia,* whether Volusion engaged in the wrongful conduct alleged; whether Class Members' PII was compromised in the Data Security Incident; whether Volusion owed a duty to Plaintiffs and Class Members; whether Volusion breached its duties; and whether Volusion committed the common law and statutory violations alleged in the Complaint. *See, e.g.,* *Heartland*, 851 F. Supp. 2d at 1054 ("The common factual question in this case is what actions Heartland took before, during, and after the data breach to safeguard the Consumer Plaintiffs' financial information."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *3 (N.D. Cal. July 22, 2020) (common questions of whether defendant employed sufficient data security measures, knew of inadequacies, and timeliness of data breach disclosure satisfy commonality requirement).

*Typicality.* Rule 23(a)(3) "requires that the named representatives' claims be typical of those of the class." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir. 2007). Here, Plaintiffs' claims are typical of Class Members' claims because they arise from the same course of alleged conduct and are premised on the same legal theory. Plaintiffs had PII that was stored on Volusion's systems and was compromised in the Data Security Incident; they suffered the same injury, were harmed by the same inadequate data security, received notice of the data breach at the same time, and seek to assert the same underlying claims as the Class. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.").

*Adequacy.* The Court should also easily conclude that "the representative parties will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). This requirement is satisfied, as here, when (i) there are no substantial conflicts of interest between the class representatives and the class; and (ii) the representatives and their attorneys will properly prosecute the case. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975). Plaintiffs adequately represent the Class, as they have no conflicts of interest

with other Class members, are subject to no unique defenses, and they and Class Counsel have and continue to vigorously prosecute this case on behalf of the Class. *See* Decl. ¶ 30. Further, Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. *Id.*; *see also Heartland*, 851 F. Supp. 2d at 1055 (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "in similar data-breach cases").

2. The Class Meets the Demands of Rule 23(b)(3).

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods.*, 521 U.S. at 614. Plaintiffs seek Rule 23(b)(3) certification, which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). However, "[s]o long as there is sufficient commonality to establish that the class is generally cohesive, the propriety of a settlement need not depend on satisfaction of a 'predominance' requirement." *Heartland*, 851 F. Supp. 2d at 1058 (citation omitted).

*Predominance.* Common legal and factual questions predominate in this Litigation relating to the Data Security Incident and Volusion's response to the same. Rule 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of the claim is susceptible to classwide proof. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, it requires that common questions predominate over questions affecting only individual class members. *Id.* Here, for settlement purposes, central common questions predominate over any questions that may affect individual Class Members, including whether Volusion owed a duty to Plaintiffs and Class Members; breached its duty; and unreasonably delayed in notifying Plaintiffs and Class Members of the Data Security Incident's material facts. These issues are subject to classwide proof and outweigh those issues that are subject to individualized proof. "Indeed, the focus on a defendant's security measures in a data breach class action is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *7 (quotation marks

omitted) (collecting cases). Predominance is satisfied. Certification will meet Rule 23(b)(3)'s objective to promote economy and efficiency of time, effort, and expense over separate suits.

*Superiority.* This class action is the superior means of adjudication under Rule 23(b)(3). The value of each Class Members' claim is miniscule in comparison to the cost of litigating individual actions, particularly as Volusion has already demonstrated that it will vigorously defend against the claims asserted here. Thus, Class Members would not individually be able to seek redress in this matter in an economically feasible manner. It is also desirable to concentrate the litigation of the claims before this Court in view of the scale of the Class under Rule 23(b)(3)(C). With approximately 502,000 Class members, a class action would be superior to individual adjudication. *See Abboud v. Agentra*, LLC, No. 3:19-CV-00120-X, 2020 WL 5526557, at *4 (N.D. Tex. Sept. 14, 2020) (class treatment superior to host of individual lawsuits where estimated class numbered in the thousands).

### 3. The Court Should Approve the Proposed Class Notice Program.

Notice of a proposed settlement to class members must be the "best notice practicable," Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen*, 417 U.S. at 173. The proposed Class Notice meets these requirements. The Settlement Agreement requires Volusion to provide to the Settlement Administrator a list of all persons to whom it sent its Notice of Data Incident. Agreement ¶ IX.C. The Settlement Administrator will send Class Notice to Class Members via email and First-Class U.S. Mail if email is not available. *Id.* ¶¶ X.A, Ex. B (Postcard Notice); Ex. C (Email Notice). From the date of the first Notice, and thereafter for a period of no less than 6 months after the Effective Date, a dedicated settlement website that will contain relevant documents, including the Class Notice, the Settlement Agreement, this Motion, the Preliminary Approval Order, Plaintiffs' fee application, and a downloadable and online version of the Claim Form and Long Form Notice. *Id.* ¶ XI.C.2, Ex. D (Long Form Notice). It will also include a toll-free telephone number, e-mail address, and mailing address for Class Members to contact the Settlement Administrator directly. *Id.*

Substantively, Rule 23(c)(2)(B) requires, and the Class Notice provides, information, written in easy-to-understand plain language, regarding:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *Odonnell*, 2019 WL 4224040, at *26. Instead, it need only satisfy the broad reasonableness standards imposed by due process. *Id.* Here, the Class Notice defines the Class; explains all Class members' rights, the scope and impact of Released Claims, and the applicable deadlines for submitting Claims, objecting, opting out; and describes in detail the monetary relief provided by the Settlement Agreement, including the procedures for allocating and distributing the Settlement Benefits amongst the Class Members, Class Representatives, Class Counsel, and the Settlement Administrator. The Notice also indicates the time and place of the Final Approval Hearing and explains the methods for objecting to or opting out of the Settlement. It details the provisions for payment of Attorneys' Fees, Costs and Service Awards, and provides contact information for Class Counsel. Thus, the Class Notice is designed to give the best notice practicable, is tailored to reach the Class members, and protects their due process rights.

## V.    <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs respectfully request that for settlement purposes only, this Court: (a) preliminarily certify the Class; (b) preliminarily approve the Settlement as fair, adequate, and reasonable; (c) appoint Plaintiffs as Class Representatives; (d) appoint Class Counsel as counsel for the Class; (e) and set the Class Notice Date, Claims Deadline, Opt-Out Deadline, and Objection Deadline; (f) approve the form and contents of the Class Notice to be posted on the settlement website substantially similar to the ones attached to the Settlement Agreement; (g) approve a Claim Form substantially similar to that attached to the Settlement Agreement; (h) appoint Kroll as the Settlement Administrator; and (i) schedule the Final Approval Hearing. A proposed Order Granting Preliminary Approval is attached as **Exhibit 5**.

Date: April 12, 2022

/s/ Jonathan M. Streisfeld
Jonathan M. Streisfeld (*pro hac vice*)
**KOPELOWITZ   OSTROW   FERGUSON
WEISELBERG GILBERT**
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Fax: (954) 525-4300
streisfeld@kolawyers.com

Jeff Edwards
Tex. Bar No. 24014406
Michael Singley
Tex. Bar No. 00794642
David James
Tex. Bar No. 24092572
**EDWARDS LAW GROUP**
1101 East 11th St.
Austin, TX 78702
512-623-7727
Fax: 512-623-7729
mike@edwards-law.com
jeff@edwards-law.com
david@edwards-law.com

Melissa S. Weiner (*pro hac vice*)
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Fax: (612) 389-0610
mweiner@pswlaw.com

Mark A. Clifford (*pro hac vice*)
Hassan A. Zavareei (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
mclifford@tzlegal.com

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of April, 2022, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court for the Western District of Texas via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matters.

Date: April 12, 2022

*/s/ Jonathan M. Streisfeld*
Jonathan M. Streisfeld