**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

JULIO LOPEZ and MICHAEL OROS,

*On Behalf of Themselves and All Others
Similarly Situated*,

                Plaintiffs,

v.

VOLUSION, LLC,

                Defendant.

Case No.: 1:20-cv-00761-LY

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH DEFENDANT VOLUSION, LLC**

978546.5

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...............................................................................................................1

II.    CASE BACKGROUND .....................................................................................................2

    A.    Factual Background ................................................................................................2

    B.    The Litigation.........................................................................................................3

    C.    Mediation and Settlement .....................................................................................3

    D.    Settlement Benefits ................................................................................................4

    E.    Preliminary Approval and Notice .........................................................................5

III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR
PURPOSES OF THE SETTLEMENT .............................................................................5

    A.    The Settlement Class..............................................................................................5

    B.    The Class Meets the Prerequisites of Rule 23(a) ..................................................6

        1.    Numerosity.................................................................................................6

        2.    Commonality..............................................................................................7

        3.    Typicality ..................................................................................................8

        4.    Adequacy of Representation ......................................................................8

    C.    The Class Meets the Demands of Rule 23(b)(3).....................................................8

        1.    Common Legal and Factual Questions Predominate in this
Litigation..................................................................................................9

        2.    A Class Action is the Superior Means to Adjudicate Plaintiffs'
Claims .....................................................................................................10

IV.    FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT SHOULD BE
GRANTED BECAUSE THE SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE...................................................................................................................10

    A.    Legal Standard .....................................................................................................10

    B.    The Proposed Settlement Satisfies Rule 23(e) and the *Reed* Factors ...................12

        1.    Class Representatives and Class Counsel have Adequately
Represented the Settlement Class ...........................................................12

        2.    The Settlement was the Result of Arm's-Length Negotiations
Absent Fraud or Collusion ......................................................................13

        3.    The Settlement is Favorable Given the Complexity, Expense, and
Likely Duration of the Litigation.............................................................13

        4.    The State of Litigation and the Available Discovery................................15

        5.    The Settlement Terms Represent a Highly Favorable Compromise

|  |  | that Appropriately Balances the Merits of Plaintiffs' Claims and the Likelihood of Success with the Attendant Risks .................................16 |
|  | 6. | The Settlement is in the Class's Best Interest .............................................17 |
|  | 7. | The Settlement Treats Class Members Equitably Relative to Each Other ..........................................................................................................18 |
| V. |  | THE COURT-APPROVED NOTICE AND CLAIMS PROCESS SATISFIES DUE PROCESS AND WAS FULLY IMPLEMENTED .................................18 |
|  | A. | CAFA Notice ...............................................................................................19 |
|  | B. | Class Notice ................................................................................................19 |
|  | C. | Reaction and Response of Settlement Class Members ........................................20 |
| VI. |  | CONCLUSION.............................................................................................20 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmad v. Old Republic Nat. Title Ins. Co*.,
  690 F.3d 698 (5th Cir. 2012) ...................................................9

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
  No. 4:17-CV-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019)...........................12

*Almond v. Singing River Health Sys.*,
  138 S. Ct. 1000 (2018)..................................................12

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...............................................6, 9, 10

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)...................................................9

*Ayers v. Thompson*,
  358 F.3d 356 (5th Cir. 2004) ...........................................15

*Bahnmaier v. Wichita State University*,
  No. 2:20-cv-02246-JAR (D. Kan.) ...........................................15

*In re Banner Health Data Breach Litig.*,
  No. 2:16-cv-02696-PHX (D. Az.)...........................................15

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ...........................................10

*Crutchfield v. Sewerage & Water Bd. of New Orleans*,
  829 F.3d 370 (5th Cir. 2016) .............................................9

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) .............................................7

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) .........................................13, 16, 17

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)...................................................19

*Garcia v. Gloor*,
  618 F.2d 264 (5th Cir. 1980) .............................................6

*Gen. Tel. Co. of the Northwest, Inc. v. EEOC*,
446 U.S. 318 (1980)............................................................................................7

*Gordon v. Chipotle Mexican Grill, Inc.*,
No. 1:17-cv-01415-CMA-SKC (D. Col.) ..............................................................15

*Hays v. Eaton Grp. Attorneys, LLC*,
No. 17-88-JWD-RLB, 2019 WL 427331 (M.D. La. Feb. 4, 2019) ........................12

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1042 (S.D. Tex. 2012) ......................................................... *passim*

*James v. City of Dallas*,
254 F.3d 551 (5th Cir. 2001) ..............................................................................8

*Jones v. Singing River Health Servs. Found.*,
865 F.3d 285 (5th Cir. 2017) .........................................................................12, 13

*Kincade v. General Tire and Rubber Co.*,
635 F.3d 501 (5th Cir. 1981) .............................................................................14

*Klein v. O'Neal, Inc.*,
705 F. Supp. 2d 632 (N.D. Tex. 2010) ....................................................11, 14, 17

*Langbecker v. Elec. Data Sys. Corp.*,
476 F.3d 299 (5th Cir. 2007) ..............................................................................8

*McGlenn v. Driveline Retail Merch., Inc.*,
No. 18-CV-2097, 2021 WL 165121 (C.D. Ill. Jan. 19, 2021) ..............................17

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) ..............................................................................10

*ODonnell v. Harris County, Texas*,
No. H-16-1414, 2019 WL 4224040 (Sept. 5, 2019) .........................................12, 19

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*,
910 F. Supp. 2d 891 (E.D. La. 2012)....................................................................11

*Parker v. Anderson*,
667 F.2d 1204 (5th Cir. 1982) .............................................................................16

*Pollard v. Remington Arms Co., LLC*,
896 F.3d 900 (8th Cir. 2018) ...............................................................................1

*Purdie v. Ace Cash Express, Inc.*,
No. 301CV1754L, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) ......................11

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ............................................................................ *passim*

*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*,
    188 F.R.D. 433 (W.D. Tex. 1999) ...........................................................................16

*Stott v. Capital Fin. Servs., Inc.*,
    277 F.R.D. 316 (N.D. Tex. 2011) .............................................................................18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ...................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................................7

*Welsh v. Navy Fed. Credit Union*,
    No. 5:16–CV–1062–DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ..............10, 12, 18

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ............................7, 9

**Other Authorities**

Fed. R. Civ. P. 23(a) .....................................................................................................6

Fed. R. Civ. P. 23(a)(1) .................................................................................................6

Fed. R. Civ. P. 23(a)(2) .................................................................................................7

Fed. R. Civ. P. 23(a)(3) .................................................................................................8

Fed. R. Civ. P. 23(a)(4) .................................................................................................8

Fed. R. Civ. P. 23(b)(3)...........................................................................................6, 9, 10

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................18

Fed. R. Civ. P. 23(e) ....................................................................................................13

Fed. R. Civ. P. 23(e)(2)........................................................................................10, 12, 18

## I.    __INTRODUCTION__

On May 12, 2022, this Court preliminarily approved the class action Settlement[1] between Plaintiffs Julio Lopez and Michael Oros, on behalf of themselves and all others similarly situated, and Defendant Volusion, LLC, which would resolve the pending claims in this nationwide class action. *See* Order Granting Preliminary Approval, May 12, 2022, Dkt. No. 40 ("Preliminary Approval Order"). Plaintiffs now move for final approval of the Settlement because it is fair, reasonable, and adequate, and the Settlement Administrator carried out the Court-ordered Class Notice program. *Id.* at 5. Kroll Settlement Administration LLC, the Court-appointed Settlement Administrator (*see id.*), has executed the Class Notice program in accordance with the Preliminary Approval Order. *See* Declaration of Justin R. Hughes, Senior Director of Kroll, filed concurrently herewith ("Hughes Decl."), ¶ 22.[2]

The notice process has confirmed that the Settlement is fair, reasonable, and adequate, and should be granted final approval by the Court. The reaction of the Settlement Class members has been uniformly positive with only two requests for exclusion and no objections (as of the filing of this Motion) out of 528,935 Settlement Class Members. *See* Hughes Decl. ¶¶ 21, 18, Exhibit E. The Notice was the best practicable notice under the circumstances and met the requirements of due process and Rule 23. It has reached 95% of the Settlement Class, far exceeding the Federal Judicial Guideline of 70%. *Id.* ¶ 22; *Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 906 (8th Cir. 2018) (holding notice that reached 73.7%, or possibly as low as 49% of class members, satisfied due process).

---

[1] All capitalized terms herein have the same meaning as defined in the Settlement Agreement. Dkt. No. 39-1. The term "Class" or "Settlement Class" is consistent with the definition of the term in the Court's Preliminary Approval Order. *See* Preliminary Approval Order at 3; Section III.A.

[2] Class Counsel are Michael Singley of Edwards Law Group, Melissa S. Weiner of Pearson, Simon & Warshaw, LLP, Jonathan M. Streisfeld of Kopelowitz Ostrow Ferguson Weiselberg Gilbert, and Hassan A. Zavareei of Tycko & Zavareei LLP. *See* Preliminary Approval Order at 4.

Although the Court-approved claims process is ongoing, the Settlement represents an outstanding result for the Settlement Class and warrants final approval. Plaintiffs therefore respectfully request that the Court grant this Motion and enter judgment.

## II.     CASE BACKGROUND

### A.      Factual Background

Volusion is a technology company that provides "the infrastructure behind some of the most successful ecommerce stores online." *See* Class Action Complaint ("Complaint" or "Compl."), Dkt. No. 1, ¶ 1. It offers an "all-in-one platform" for thousands of businesses to set up e-commerce shops, including services that allow businesses to accept credit card payments. *Id.*

Between September 7, 2019 and October 10, 2019, unauthorized actors gained access to Volusion's e-commerce platform by inserting malicious code into a Volusion JavaScript library, including a "payment card skimmer" that accessed and acquired personal identifiable information ("PII") of consumers making purchases through Volusion's e-commerce platform, including Plaintiffs. *Id.* ¶¶ 2-3. Consumers who made purchases through the online stores using Volusion's compromised payment software during this time period had their card details and other personal information stolen and passed to an unauthorized third party. *Id.* ¶ 3. The PII stolen in the Data Security Incident (referred to in the Complaint as the "Data Breach") included names, addresses, phone numbers, email addresses, credit card numbers, CVVs, and expiration dates. *Id.* Although Volusion discovered the Data Security Incident on or about October 8, 2019, it was not until April 21, 2020 that Volusion distributed a Notice of Data Incident to its customers, including Plaintiffs. *See id.* ¶¶ 4-6.

Plaintiffs allege Volusion is liable for the Data Security Incident because it failed to: (a) exercise reasonable care and implement and maintain adequate security systems, protocols, and practices; (b) detect the breach while it was ongoing; and (c) timely notify Plaintiffs and Class

members of the Data Security Incident. *Id*. ¶ 98. Plaintiffs and Class Members have allegedly suffered economic and noneconomic injuries. *See, e.g.*, *Id*. ¶¶ 59-61, 68, 71, 100.

**B.     The Litigation**

On April 24, 2020, Plaintiff Lopez filed a Class Action Complaint in the United States District Court for the Southern District of Florida, asserting claims against Volusion related to the Data Security Incident. On July 16, 2020, Plaintiff Lopez filed a Notice of Voluntary Dismissal, without prejudice, and, together with Plaintiff Oros, filed a Class Action Complaint in this Court on July 17, 2020, asserting the same claims alleged in the initial complaint, as well as claims for violations of certain Illinois statutory provisions. *See generally* Complaint.

On July 27, 2020, Volusion filed a Voluntary Chapter 11 Petition for Non-Individuals Bankruptcy, whereupon an automatic stay pursuant to 11 U.S.C. § 362(a) went into place. *See* Dkt No. 16. On August 10, 2020, this Court entered its Order staying the Litigation. *See* Dkt. No. 17. On June 2, 2021, the Bankruptcy Court entered its Order allowing Plaintiffs to pursue the Litigation provided that any recovery awarded shall be limited to any available insurance proceeds covering the Reorganized Debtor (*i.e.*, Volusion).[3] *See* Dkt. No. 23. On August 18, 2021, this Court lifted the stay in the Litigation, and Volusion was ordered to file an answer to Plaintiffs' Complaint on or before September 13, 2021. *See* Dkt. No. 26. On September 13, 2021, Volusion filed a Motion to Dismiss (Dkt. No. 27), which was fully briefed, but not ruled on by the Court.

**C.     Mediation and Settlement**

While the Motion to Dismiss remained pending, on February 7, 2022, the Parties mediated with experienced privacy litigation class action mediator, Bruce A. Friedman, Esq. of JAMS. *See* Joint Declaration of Class Counsel filed concurrently herewith ("Joint Decl."), ¶ 9. In advance, the

---

[3] Volusion's insurance policy from Hartford Fire Insurance Company covers certain cyber risks, including but not limited to those alleged in the Complaint.

Parties submitted lengthy mediation briefs, and Volusion provided settlement discovery to Plaintiffs regarding the insurance funds it had to resolve this Litigation. *Id.* Mediation was not successful that day, but Mr. Friedman and counsel continued communicating, resulting in the Parties' agreement to the material Settlement terms. *Id.* ¶ 8. On February 16, 2022, the Parties filed a Notice of Settlement, and entered into a Settlement Agreement on April 12, 2022. *See* Dkt. No. 35; Settlement Agreement, Dkt. No. 39-1.

> ### D. Settlement Benefits

The Settlement provides significant monetary relief to the Settlement Class. Volusion and its insurance company, Hartford, have agreed to pay all valid claims by Settlement Class Members up to an agreed aggregate cap or Hartford's remaining policy limits, estimated to be $4,300,000.00 at the time of the Agreement, less additional defense expenses reasonably incurred in connection with the documentation, approval and administration of final approval of the Settlement Agreement, costs of settlement administration, and any payment of attorneys' fees, reimbursement of litigation costs, and Class Representative service awards. *See* Settlement Agreement ¶ VI.B. Except as otherwise provided in the Settlement Agreement, Hartford will make all payments. *Id.* ¶ VI.A. The Settlement will resolve all claims that Plaintiffs and the Settlement Class have against Volusion and the Released Parties arising from the Data Security Incident. *Id.* ¶ XIV.

Every Settlement Class Member who can provide reasonable documentation to establish both the factual loss and the dollar amount of the loss, and demonstrate they have made reasonable efforts to exhaust all other sources of reimbursement, is entitled to (1) a payment up to a maximum of $1,500.00, and (2) compensation for time spent responding to the Data Security Incident up to a maximum of 3 hours of lost time at $20.00/hour, which will be included in, and not in addition

to, the calculation of reimbursement for documented out-of-pocket losses.[4] *Id*. ¶¶ III.A.1-2.

### E.    Preliminary Approval and Notice

On May 12, 2022, this Court entered an Order granting preliminary approval to the Settlement. *See* Preliminary Approval Order. The Court found, upon preliminary review, that "[t]he terms of the Settlement, including its proposed releases, are preliminarily approved as within the range of fair, reasonable, and adequate, and are sufficient to warrant providing Class Notice of the Settlement to the Class." *Id*. ¶ 7. The Court appointed Plaintiffs Julio Lopez and Michael Oros as the Class Representatives for the Settlement Class, and appointed Michael Singley (Edwards Law Group, Austin, Texas); Melissa S. Weiner (Pearson, Simon & Warshaw, LLP, Minneapolis, Minnesota); Jonathan M. Streisfeld (Kopelowitz Ostrow Ferguson Weiselberg Gilbert, Fort Lauderdale, Florida); and Hassan A. Zavareei (Tycko & Zavareei, LLP, Washington D.C.) as Class Counsel. *Id*. ¶ 6. The Court also approved the form and content of Class Notice. *Id*. ¶ 10.

## III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF THE SETTLEMENT

The Court should approve the Settlement Class because the Class meets the requirements for certification under Rule 23.

### A.    The Settlement Class

The proposed nationwide Settlement Class includes:

All persons to whom Volusion sent its Notice of Data Incident dated on or about April 21, 2020, advising that on or about October 8, 2019, Volusion learned that personal information of some customers of Volusion's merchant clients may have been improperly exposed as a result of malware placed on Volusion's e-commerce platform.

Excluded from the Class is any judge presiding over this matter and any members of their first-degree relatives, judicial staff, the officers and directors of Volusion

---

[4] To the extent any check or electronic payment issued by the Settlement Administrator remains uncashed, those unpaid funds will be forfeited by the Settlement Class Member and may be distributed by the Settlement Administrator to a Cy Pres Recipient approved by the Court. *Id*. ¶ VIII.B. The Parties propose Electronic Frontier Foundation. *Id*. ¶ II.P.

and its customers who were impacted by the Data Security Incident, Class Counsel and their first-degree relatives, and persons who timely and validly request exclusion from the Class.

Preliminary Approval Order ¶¶ 2-3.

### B.       The Class Meets the Prerequisites of Rule 23(a)

Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Rule 23(a) requires that (1) the proposed settlement class is so numerous that joinder of all individual class members is impracticable (numerosity); (2) there are questions of law or fact common to the proposed settlement class (commonality); (3) Plaintiffs' claims are typical of those of the Class (typicality); and (4) Plaintiffs and Class Counsel will adequately protect the interests of the Class (adequacy). Fed. R. Civ. P. 23(a)(1)-(4). Once Rule 23(a)'s four prerequisites are met, Plaintiffs must show that—for purposes of a settlement providing cash relief—the proposed Settlement Class satisfies Rule 23(b)(3) by showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

As more fully set forth in Plaintiffs Motion for Preliminary Approval (Dkt. No. 39) and as acknowledged by the Court in granting that motion (*see* Preliminary Approval Order), Plaintiffs and the Settlement Class satisfy the requirements of Rule 23 for certification as follows:

### 1.       Numerosity

Rule 23(a)(1) provides that the class be so "numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980). There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination "requires examination of the specific facts of each case and imposes no

absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980).
Here, the numerosity requirement is easily met as the Settlement Class consists of over 500,000
individuals. *See* Hughes Decl. ¶ 18.

        2.     <u>Commonality</u>

Rule 23(a)(2)'s commonality requirement demands that "there are questions of law or fact
common to the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 368 (2011) (citing Fed. R.
Civ. P. 23). The rule does not require that all issues be the same, but there must be at least one
common issue "that enables the class action 'to generate common answers apt to drive the
resolution of the litigation.'" *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (quoting
*M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012)).

The commonality requirement is easily satisfied here as each Settlement Class Member's
claims turn on whether Defendant's security environment was adequate to protect their PII. Thus,
common questions include, *inter alia*, whether Defendant engaged in the wrongful conduct
alleged; whether Settlement Class Members' PII was compromised in the Data Security Incident;
whether Defendant owed a duty to Plaintiffs and Settlement Class Members; whether Defendant
breached its duties and whether Defendant committed the common law and statutory violations
alleged in the Complaint. *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach
Litig.*, 851 F. Supp. 2d 1042, 1054 (S.D. Tex. 2012) ("The common factual question in this case is
what actions Heartland took before, during, and after the data breach to safeguard the Consumer
Plaintiffs' financial information."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-
MD-02752-LHK, 2020 WL 4212811, at *3 (N.D. Cal. July 22, 2020) (common questions of
whether defendant employed sufficient data security measures, knew of inadequacies, and
timeliness of data breach disclosure satisfy commonality requirement).

3.      Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir. 2007). Here, Plaintiffs' claims are typical of Settlement Class Members' claims because they arise from the same course of alleged misconduct and are premised on the same legal theories. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.").

4.      Adequacy of Representation

Rule 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class." *See Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 294 (5th Cir. 2017), *cert. den. sub nom.*. First, the interests of the Settlement Class Members are aligned with those of the representative Plaintiffs. Plaintiffs, like all Settlement Class Members, share an overriding interest in obtaining the largest possible monetary recovery. *See* Joint Decl. ¶ 17. Second, Class Counsel are qualified, experienced, and thoroughly familiar with data breach class action litigation, and they have diligently represented the interests of the Settlement Class throughout this litigation and will continue to do so. *See Id.* ¶ 18; *In re Heartland*, 851 F. Supp. 2d at 1055 (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases").

C.      **The Class Meets the Demands of Rule 23(b)(3)**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must

show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Plaintiffs seek class certification under Rule 23(b)(3), which provides that a class action may be maintained if "questions of law or fact common to class members predominate over questions affecting only individual members," and "class action is superior to other available methods" for adjudicating the case. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 592-93.

### 1.    Common Legal and Factual Questions Predominate in this Litigation

The predominance inquiry under Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012). Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each element of the claim is susceptible to class-wide proof. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, it does require that common questions predominate over any questions affecting only individual class members. *Id*. "A common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016) (citations and quotations omitted). Common legal and factual questions predominate in this Litigation relating to the Data Security Incident and Volusion's response thereto.

Here, the central common questions include whether Volusion owed a duty to Plaintiffs and Settlement Class Members, whether Volusion breached its duty, and whether Volusion unreasonably delayed in notifying Plaintiffs and Settlement Class Members of the material facts of the Data Security Incident. These issues are subject to classwide proof and outweigh those issues that are subject to individualized proof. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *7 (collecting cases).

2.     A Class Action is the Superior Means to Adjudicate Plaintiffs' Claims

The second prong of Rule 23(b)(3) requires the Court to determine whether a Class Action is the superior means to adjudicate the present matter. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 617.

Each of the enumerated factors favor class treatment in this case. The value of each Settlement Class Members' claim is infinitesimal compared to the cost of litigating each claim individually. Thus, Settlement Class Members would not individually be able seek redress in this matter in an economically feasible manner. It is desirable to concentrate the litigation of the claims into the present forum in view of the scale of the class under Rule 23(b)(3)(C). With over 500,000 class members, a class action would be superior over individual adjudication. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999). As detailed above, this Litigation includes other consolidated actions initiated by other Settlement Class Members, which weighs in favor of class treatment under Rule 23(b)(3)(B).

Therefore, because the proposed Settlement Class satisfies the requirements for class certification, the Court should finally certify the Settlement Class.

## IV.   FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT SHOULD BE GRANTED BECAUSE THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.     Legal Standard

In determining whether to grant final approval, courts must determine whether the settlement is fair, adequate, and reasonable. *Welsh v. Navy Fed. Credit Union*, No. 5:16–CV–1062–DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018); Fed. R. Civ. P. 23(e)(2). In making its determination courts must consider the "overriding public interest in favor of settlement" in class action suits. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). However, the Fifth Circuit has routinely held that there is a strong presumption that voluntary settlement agreements

are fair, reasonable, and adequate. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 930-31 (E.D. La. 2012), *aff'd sub nom In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ("Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate.); *see also Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (holding there is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

Prior to 2018, the Fifth Circuit Court of Appeals applied six factors, called the *Reed* factors, to determine whether a settlement is fair, adequate and reasonable. These factors are:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)). In 2018, Congress codified these factors, and those used by other jurisdictions, by adopting Rule 23(e)(2). The Rule directs courts to weigh the following factors to determine whether a settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Since the amendment, the Fifth Circuit often analyzes both the Rule 23(e)(2) and *Reed* factors to analyze class settlements. *ODonnell v. Harris County, Texas*, No. H-16-1414, 2019 WL 4224040, at *8 (Sept. 5, 2019); *see also Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 4:17-CV-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019).

Finally, "[b]efore approving the settlement, the court must hold a hearing to consider whether a proposed class action settlement is "fair reasonable, and adequate."" *Welsh*, 2018 WL 7283639 (citing Fed. R. Civ. P. 23(e)(2)); *Jones*, 865 F.3d at 293; *Almond v. Singing River Health Sys.*, 138 S. Ct. 1000 (2018).

### B.  The Proposed Settlement Satisfies Rule 23(e) and the *Reed* Factors

#### 1.  Class Representatives and Class Counsel have Adequately Represented the Settlement Class

Rule 23(e)(2) is satisfied as Class Representatives and Class Counsel have provided exceptional representation for the Settlement Class. *See* Sections III.B.3-4 above. Plaintiffs largely occupy the exact circumstances as other Settlement Class Members as their claims and defenses are the same, their injuries arose from the same course of conduct by Defendant, they all wish to maximize the Settlement Benefits, and they have no conflicts of interest. *See* Joint Decl. ¶ 17.

Class Counsel have extensive experience in the litigation, certification, trial and settlement of class action cases, including data privacy cases. *Id*. ¶ 18; *see also In re Heartland*, 851 F. Supp. 2d at 1055 (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). Class Counsel have vigorously prosecuted and continue to vigorously prosecute this case on behalf of the Settlement Class. *See* Joint Decl. ¶ 18. Class Counsel conducted a thorough investigation of the facts both before and

during the course of the Litigation. *Id*. ¶ 7. Class Counsel has litigated this matter through three courts; the Southern District of Florida, the Southern District of Texas – Bankruptcy, and this Court. *Id*. Class Representatives and Class Counsel settled this Litigation on a favorable basis to the Settlement Class without unduly prolonging it and without the expense and risk of a trial. *See* Settlement Agreement.

2. The Settlement was the Result of Arm's-Length Negotiations Absent Fraud or Collusion

Rule 23(e)(2)(B) and the first *Reed* factor weigh in favor of approval as the Settlement was negotiated at arm's-length and without fraud or coercion. "The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *In re Heartland*, 851 F. Supp. 2d at 1063 (citing *Klein*, 705 F. Supp. 2d at 651); *see also DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 287 (W.D. Tex. 2007).

Here, the Parties engaged in extensive arm's-length negotiations overseen by experienced mediator Bruce A. Friedman, Esq. of JAMS. *See* Joint Decl. ¶ 9. Indeed, negotiations conducted with the involvement of an experienced mediator "is a strong indicator of procedural fairness." *Jones*, 865 F.3d at 295-96 (quoting *Morris v. Affinity Health Plan, In*c., 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012)); *see also* Comment to December 2018 Amendment to Fed. R. Civ. P. 23(e) ("The involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.").

Further reducing the risk of fraud or collusion, Counsel did not negotiate attorneys' fees until both sides agreed to the terms of the recovery for the Class. Joint Decl. ¶ 11; *In re Heartland*, 851 F. Supp. 2d at 1064 (citing *In re Combustion, Inc.*, 968 F. Supp. 1116, 1127 (W.D. La. 1997)).

3. The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation

There is an overriding public interest in favor of settlement, particularly in class action

suits. *Kincade v. General Tire and Rubber Co.*, 635 F.3d 501, 507 (5th Cir. 1981) (citing *Cotton*, 559 F.2d at 1331). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). Although this case was settled while a motion to dismiss was pending, the parties engaged in lengthy litigation to reach this point; specifically, they briefed and negotiated hotly contested issues before the Southern District of Florida, the Southern District of Texas – Bankruptcy, and this Court. *See* Joint Decl. ¶ 7.

By negotiating a Settlement at an early stage of the litigation, the parties have ensured that Settlement Class Members will receive the substantial benefits described above while avoiding the risks and potential pitfalls of prolonged litigation. While confident in the strength of their claims, Class Representatives and Class Counsel are also pragmatic and recognize the risks inherent in litigation of a complex data breach case, especially one involving a bankrupt entity. *Id.* ¶ 11. The negotiations with Volusion's bankruptcy counsel to avoid the risks of costly litigation in the bankruptcy court thereby depleting the insurance policy of a bankrupt defendant, as well as the risk of having Plaintiffs' claims disallowed entirely in bankruptcy, resulted in the Parties' agreement. *Id.*

The risks, expense, complexity, and likely duration of further litigation support final approval of the Settlement. *Id.* ¶ 19. Should litigation continue, Plaintiffs' claims could be dismissed or narrowed at the motion to dismiss stage, summary judgment, at trial, or on a subsequent appeal. *Id.* Defendant would oppose any motion for class certification. *Id.* Even if they prevailed at trial, any recovery could be delayed for years by appeals. *Id.* It is also possible, in fact, likely, any non-negotiated award at trial might never be recovered by Plaintiffs due to collectability issues. *Id.*

The Settlement provides immediate and substantial benefits to over 500,000 Class Members—similar to the relief and benefits obtained in other data breach class actions. *See, e.g.*, Settlement Agreement (ECF No. 33) and Final Approval Order (ECF No. 43), *Bahnmaier v. Wichita State University*, No. 2:20-cv-02246-JAR (D. Kan.) (claims-made settlement capped at $300 per class member for out-of-pocket losses, including up to 3 hours of lost time at $20 per hour, for class of 443,000 whose names, email addresses, dates of birth, and Social Security numbers were compromised); Settlement Agreement (ECF No. 102-1) and Final Approval Order (ECF No. 128), *Gordon v. Chipotle Mexican Grill, Inc*., No. 1:17-cv-01415-CMA-SKC (D. Col.) (claims-made settlement capped at $250 per class member for ordinary out-of-pocket losses (and up to $10,000 for certain defined, unreimbursed "extraordinary losses"), including up to 4 hours of lost time at $20 per hour, for class of approximately 10 million affected by payment card data breach); Final Approval Order (ECF No. 198), *In re Banner Health Data Breach Litig*., No. 2:16-cv-02696-PHX (D. Az.) (claims-made settlement capped at $6 million after 3 years of litigation where breach compromised names, Social Security numbers, and PHI of approximately 2.9 people).

Finally, there is no guarantee lengthy litigation and expensive discovery would lead to greater benefits for Class Members. Joint Decl. ¶ 19. Instead, the parties will bear the cost of this litigation. *Id*. An early resolution, before both sides spend significant sums on litigation costs, is in the best interest of the Settlement Class. *Id*. In short, "settling now avoids the risks and burdens of potentially protracted litigation." *Ayers*, 358 F.3d at 369.

        4.    The State of Litigation and the Available Discovery.

Under the third *Reed* factor, the key issue is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *In re Heartland*, 851 F. Supp. 2d at 1064 (quoting *Ayers*, 358 F.3d at 369). "A settlement can be

approved under this factor even if the parties have not conducted much formal discovery." *Id.* (citations omitted); *see also San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999).

Here, prior to filing the case, Class Counsel investigated the Data Security Incident, as confirmed by the extensive public sources cited in the Complaint. Joint Decl. ¶ 7. This allowed Class Counsel to determine the nature of the Data Security Incident, its perpetrator, the type of information compromised, and the number of putative Class Members. *Id.* Drawing on their previous experience in similar data-breach class actions, Class Counsel were able to determine the Settlement's adequacy in relation to the probability of success on the merits were this litigation to continue. *See Id.* ¶¶ 18, 20. Class Counsel also considered Volusion's pending bankruptcy proceedings and the risk of its insolvency. *Id.* ¶ 19.

Further, Plaintiffs participated in hard-fought negotiations only after confidential disclosure of the insurance policy limits, an understanding of the potential recovery and consideration of the impact of the bankruptcy. *Id.* ¶ 8.

> 5.   The Settlement Terms Represent a Highly Favorable Compromise that Appropriately Balances the Merits of Plaintiffs' Claims and the Likelihood of Success with the Attendant Risks

When evaluating a proposed class action settlement, "the most important factor is the [fourth *Reed* factor,] probability of plaintiffs' success on the merits." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "[T]he Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287 (citing *Reed*, 703 F.2d at 172). At the same time, a district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotation marks and alteration omitted). Similarly, the fifth *Reed* factor concerns "whether the range of possible recovery or the

benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290-91. The fourth and fifth *Reed* factors weigh in favor of final approval.

First, the Settlement terms approximate the rewards the Class likely would have received following a successful trial. Joint Decl. ¶ 6. As described above, valid Settlement Class Member claims are eligible to receive up to $1,500.00, subject to a *pro rata* reduction, if necessary. *See* Section II.D, *supra*. These Settlement Benefits represent a highly favorable compromise that balances the merits of Plaintiffs' claims and the likelihood of succeeding at trial and on appeal with the attendant risks. Joint Decl. ¶ 19. Though Plaintiffs and Class Counsel are confident they ultimately would have been able to prove their claims, they also understand the risks of litigation. *Id*.; *see, e.g.*, *McGlenn v. Driveline Retail Merch., Inc.*, No. 18-CV-2097, 2021 WL 165121, at *6 (C.D. Ill. Jan. 19, 2021) (denying class certification in data breach case because "the issues of causation and injury require individual inquiry"). Further, even if Plaintiffs prevailed, the amount Plaintiffs and the Class would have been awarded in damages, if any, is uncertain Volusion's extremely limited resources following bankruptcy with limited insurance coverage fully funding the Settlement. *See* Settlement Agreement ¶ VI.A.

The inherent uncertainty in litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. Joint Decl. ¶ 19. The proposed Settlement avoids these uncertainties and provides immediate, meaningful, and certain monetary relief; thus, Plaintiffs and Class Counsel appropriately determined that the Settlement Benefits outweigh the risks of continued litigation. *Id*. ¶¶ 16, 19, 20.

6.     The Settlement is in the Class's Best Interest

Plaintiffs and Class Counsel firmly believe that this Settlement is fair, reasonable, and adequate, and in the best interests of Class Members, which is an important consideration in any class settlement analysis. *Id*. ¶ 20; *see also Klein*, 705 F. Supp. 2d at 649 ("The Fifth Circuit has

repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement."); *Reed*, 703 F.2d at 172 (same); *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) (same). Here, Class Counsel are all highly experienced in class action litigation and well positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. Joint Decl. ¶ 18. They have collectively recovered over 3 billion dollars for class members in other litigation, including data breach cases. *See Id.*

> 7.    The Settlement Treats Class Members Equitably Relative to Each Other

The final factor, Rule 23(e)(2)(D), considers whether class members are treated equitably. Here, the Settlement provides for a notice plan that is designed to reach as many Settlement Class Members as possible and provides a significant number of Settlement Class Members with direct notice. It also informs Settlement Class Members of their right to object to, or opt out of, the Settlement. Any Settlement Class Member who submits a valid Claim is eligible to receive up to $1,500.00. Thus, the Settlement treats Settlement Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D). *See* Fed. R. Civ. P. 23(e)(2)(D).

Each factor identified under Rule 23(e)(2) and required by *Reed* is satisfied. Given the litigation risks involved and the complexity of the underlying issues, the recovery is an excellent result. It could not have been achieved without full commitment by Plaintiffs and Class Counsel, who respectfully submit that the Settlement is fair, reasonable, and adequate and meets each of the Rule 23(e)(2) and *Reed* factors. *See Welsh*, 2018 WL 7283639 at *15.

## V.   THE COURT-APPROVED NOTICE AND CLAIMS PROCESS SATISFIES DUE PROCESS AND WAS FULLY IMPLEMENTED

Notice of a proposed settlement to class members must be the "best notice practicable," Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified

through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *ODonnell*, 2019 WL 4224040, at \*26. Instead, it need only satisfy the broad reasonableness standards imposed by due process. *Id*. The Class Notice meets these requirements.

Court-approved Class Notice was sent to the Settlement Class on June 6, 2022 via email and on June 21, 2022 via First Class U.S. Mail. *See* Hughes Decl. ¶¶ 14, 15. Settlement Class Members have until September 6, 2022, to file objections or exclude themselves from the Settlement. *Id.* ¶ 19. As of the filing of this Motion, the Settlement Administrator has received only two requests for exclusion (out of a class of 528,935) and no objections. *See Id.* ¶ 21. The notice and claims process comports with due process and was implemented pursuant to the Court's Preliminary Approval Order, as follows:

### A.    CAFA Notice

Pursuant to the federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715, on April 21, 2022, Kroll, on behalf of the Defendant, sent notice of the Settlement to the Attorneys General of all U.S. states, U.S. Territories, and Puerto Rico, as well as the Attorney General of the United States. *See* Hughes Decl. ¶ 8. As of the filing of this Motion, Kroll has not received any objection or any other response from any Attorney General. *See Id*.

### B.    Class Notice

Kroll received Settlement Class data from Defendant on May 23, 2022, with a total of 529,156 unique records. *See Id.* ¶ 13. This data, which is maintained by Kroll, was used to effectuate the Class Notice campaign pursuant to the Settlement Agreement. *Id*.

On June 6, 2022, Kroll commenced Email Notice as approved by the Court to the 522,078 Settlement Class Members with email addresses on file. *Id.* ¶ 14. Approximately 7% (or 34,284) of the emails were undeliverable. *Id.* On July 27, 2022, Kroll sent a reminder email to Settlement Class Members who had not yet filed a Claim. *Id.* ¶ 19.

On June 21, 2022, Kroll mailed the Postcard Notice as approved by the Court via First-Class U.S. Mail to 27,391 Settlement Class Members for which a mailing address was available from the class data. Hughes Decl. ¶ 15. Prior to the mailing, all addresses were checked against the National Change of Address database maintained by the United States Postal Service ("USPS"). *Id.* As of the filing of this Motion, 178 Postcard Notices have been automatically re-mailed or forwarded to updated addresses provided by the USPS, and 1,180 Postcard Notices were returned by the USPS as undeliverable. *Id.* ¶¶ 16, 17. Kroll has located 817 updated addresses using an advanced search and has re-mailed Postcard Notice to those addresses. *Id.*

In addition to the direct notice outlined above, Kroll established a settlement post-office box, a settlement website (www.VolusionPrivacyClassAction.com), a toll-free number with an interactive voice response system, and an email support mailbox that can be accessed through a contact form on the settlement website. *Id.* ¶¶ 9-12.

Through the Class Notice procedures outlined above, the Class Notice program reached a total of 95% of Settlement Class Members. *Id.* ¶ 22.

### C.    Reaction and Response of Settlement Class Members

Settlement Class Members were given the means to make a Claim, request exclusion, and/or object to the Settlement. As of August 3, 2022, Kroll has received 1,071 Claim submissions. *See Id.* ¶ 20. As of August 3, 2022, Kroll has received only two requests for exclusion and no objections to the Settlement. *Id.* ¶ 21. Kroll will continue to intake and analyze Claims, as well as respond to any inquiries, through the Claims Deadline of September 6, 2022. *Id.* ¶ 23.

## VI.    CONCLUSION

For the reasons set forth herein, Class Counsel respectfully requests that the Court grant final approval of the Settlement Agreement.

Dated: August 4, 2022                    Respectfully submitted,

                                          */s/ Melissa S. Weiner*
                                          _____

                                          Melissa S. Weiner
                                           *mweiner@pswlaw.com*
                                          **PEARSON, SIMON & WARSHAW, LLP**
                                          800 LaSalle Avenue, Suite 2150
                                          Minneapolis, Minnesota 55402
                                          Telephone: (612) 389-0600
                                          Facsimile: (612) 389-0610

                                          Jeff Edwards (Tex. Bar No. 24014406)
                                           *jeff@edwards-law.com*
                                          Michael Singley (Tex. Bar No. 00794642)
                                           *mike@edwards-law.com*
                                          David James (Tex. Bar No. 24092572)
                                           *david@edwards-law.com*
                                          **EDWARDS LAW GROUP**
                                          1101 East 11th Street
                                          Austin, Texas 78702
                                          Telephone: (512) 623-7727
                                          Facsimile: (512) 623-7729

                                          Jeff Ostrow (Bar No. 121452)
                                           *ostrow@kolawyers.com*
                                          Jonathan M. Streisfeld (Bar No. 117447)
                                           *streisfeld@kolawyers.com*
                                          **KOPELOWITZ OSTROW FERGUSON**
                                              **WEISELBERG GILBERT**
                                          1 West Las Olas Blvd. Suite 500
                                          Fort Lauderdale, Florida 33301
                                          Telephone: (954) 525-4100
                                          Facsimile: (954) 525-4300

                                          Hassan A. Zavareei
                                           *hzavareei@tzlegal.com*
                                          Mark A. Clifford
                                           *mclifford@tzlegal.com*
                                          **TYCKO & ZAVAREEI LLP**
                                          1828 L Street NW, Suite 1000
                                          Washington, D.C. 20036
                                          Telephone: (202) 973-0900
                                          Facsimile: (202) 973-0950

                                          *Counsel for Plaintiffs and the Proposed Class*

978546.5                                          21